UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                         No.  10-CR-1288-LTS

VICTOR HERNANDEZ,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

          The Court has received Defendant Victor Hernandez's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which was amended by Congress as part of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194.  (Docket Entry No. 65, the "Motion".)  On September 14, 2012, upon pleading guilty, Mr. Hernandez was convicted of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(b), and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  (Docket Entry No. 31.)  On July 3, 2013, the Court sentenced him principally to 147 months of imprisonment, to be followed by a five-year supervised release term.  (Docket Entry Nos. 40, 41.)  Mr. Hernandez is currently incarcerated at the Federal Correctional Institution ("FCI") Fort Dix (a low security correctional facility in New Jersey), is scheduled for release to home confinement in October 2020, and is due to be released from Bureau of Prisons' ("BOP") custody on April 7, 2021.  (Motion at 1.)

          Through the Motion, Mr. Hernandez seeks an order resentencing him to time served and placing him on supervised release.  Mr. Hernandez claims that his medical conditions (including chronic obstructive pulmonary disease ("COPD"), type II diabetes mellitus, obesity, and hypertension), and his age (62 years old) put him at a high risk of contracting severe illness related to COVID-19, and therefore constitute "extraordinary and compelling reasons" to reduce

his sentence.  (Motion at 1-3.)  On June 30, 2020, the Government filed its opposition to the Motion.  (Docket Entry No. 67, the "Opp.".)  On July 3, 2020, Mr. Hernandez filed a reply.  (Docket Entry No. 68, the "Reply".)  The Court has reviewed the parties' submissions carefully and, for the following reasons, Mr. Hernandez's motion is granted.

BACKGROUND

Mr. Hernandez's conviction stems from his actions on October 29, 2010, when he robbed a man at gunpoint.  (Opp. at 6; Presentence Report dated April 2, 2013 ("PSR"), ¶ 9.)  The man, who worked for a company which serviced automated teller machines ("ATMs"), had withdrawn $21,000 in cash from a bank and was returning to his vehicle where his three-year-old son was in the back seat.  (PSR ¶ 9.)  Mr. Hernandez pointed a gun at the victim and his son, threatened to shoot the son if the victim failed to comply, and handcuffed the victim to the steering wheel.  (Id. ¶¶ 9-10.)  When several bystanders attempted to detain Mr. Hernandez after the incident, Mr. Hernandez brandished his firearm and threatened to shoot.  (Id. ¶ 11.)  Thankfully, neither the victim, his son, nor any bystander suffered any physical injury from Mr. Hernandez's actions.  (Id. ¶ 13.)

At sentencing on July 3, 2013, the Court considered the factors set forth in 18 U.S.C. § 3553(a), and recognized that Mr. Hernandez committed "a very serious crime" and that he "threatened a three year old and good Samaritans with a gun."  (Docket Entry No. 41 at 12:16-14:11.)  The Court also recognized that Mr. Hernandez had been raised in "tragic circumstances," had "struggled with problems of addition," had been loyal to his family, had "devoted himself strikingly to undertaking education programs" while in custody, and expressed remorse at sentencing.  (Id.)  For all of these reasons, as well as Mr. Hernandez's age—which

suggested "that his risk of recidivism [would] be much lower after he completes his term of imprisonment"—the Court sentenced Mr. Hernandez to a total of 147 months imprisonment and a five year term of supervised release.  (Id. at 13:24-14:20.)

On June 23, 2020, Mr. Hernandez filed the instant application for compassionate release, claiming that his conditions of COPD, diabetes, hypertension, and obesity "render[ ] him particularly susceptible" to severe illness resulting from a COVID-19 infection, and that "prisons are more conducive to viral infection than home quarantine."  (Motion at 1, 3.)  He also reports that, during the approximately 116 months he has been in federal custody (amounting to more than three-fourths of his 147-month custodial sentence), he has had a "clean history" and that his record at FCI Fort Dix has been "incident free."  (Id. at 2.)  Finally, he states that he is "currently scheduled for home con[fin]ement in October, 2020," and that, if released, he intends to seek part-time employment and to care for his wife, who is "in ill health, suffering from diabetes, COPD[,] and lupus."  (Id. at 1-2.)

DISCUSSION

Mr. Hernandez seeks an order directing his compassionate release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 116-145).  The applicable policy statement provides that extraordinary and compelling reasons may exist if:

> the defendant is . . . suffering from a serious physical or medical condition, or . . . experiencing deteriorating physical . . . health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

See U.S.S.G. 1B1.13(2) and cmt. N.1. (A)(ii)(I), 1(A)(ii)(III) (U.S. Sentencing Comm'n 2018).[1] See also United States v. Gross, No. 15-CR-769 (AJN), 2020 WL 1862251, at *3 (SDNY Apr. 14, 2020) ("[N]umerous courts have recently concluded that 'extraordinary and compelling reasons' exist for purposes of the policy statement where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19.").  The applicable policy statement also requires the Court to determine that "[t]he defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)," before reducing a term of imprisonment under Section 3582(c)(1)(A).  U.S.S.G. § 1B1.13.

The Government concedes that Mr. Hernandez "has satisfied the mandatory statutory exhaustion requirement" of Section 3582(c)(1)(A), because "it has been more than 30 days" since he submitted a request for compassionate release to the Warden of FCI Fort Dix. (Opp. at 5 n.9.)[2]  The Government also concedes that Mr. Hernandez has satisfied the "extraordinary and compelling reasons" threshold for a reduction in sentence under Section 3582(c)(1)(A)(i), given that his conditions of type II diabetes, COPD, and obesity each place Mr. Hernandez at a heightened risk of severe illness from COVID-19.  (Id. at 6 (citing CDC,

---

[1]   Section 1B1.13 is a policy statement governing "reduction in term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)."  U.S.S.G. § 1B1.13.

[2]   Mr. Hernandez appears to have submitted separate requests for compassionate release to the Warden on April 14 and 20, 2020. (See Motion at Ex. 1; Opp. at Ex. A.)

<u>Coronavirus Disease 2019 (COVID-19): People Who Need Extra Precautions, People With Certain Medical Conditions</u>, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 10, 2020)).)³ The Court agrees, and finds, for those reasons and for substantially the reasons set forth in Mr. Hernandez's submissions, that he has satisfied both the exhaustion and "extraordinary and compelling reasons" requirements for a reduction in sentence under Section 3582(c)(1)(A).

The Court must therefore consider (1) whether the relevant factors set forth in Section 3553(a) outweigh the extraordinary and compelling reasons warranting a reduction in sentence, see <u>United States v. Ebbers</u>, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020) ("in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release"),⁴ and (2) whether Mr. Hernandez is a "danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.⁵

---

3   The same CDC guidance provides that individuals with hypertension (like Mr. Hernandez) "might be" at an increased risk for severe illness from COVID-19.

4   The Section 3553(a) factors are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C.A. 3553(a) (Westlaw through P.L. 116-145).

5   Section 3142(g) provides that the Court should consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the

The Court's consideration of the Section 3553(a) factors does not militate against granting Mr. Hernandez's Motion.  Unlike at the time of his original sentencing, Mr. Hernandez's history and characteristics now appear to include not only remorse and substantial steps toward self-rehabilitation, but also an incident-free 116 months in federal custody.  (Motion at 2; Reply at 2.)  Moreover, Mr. Hernandez suffers from at least three health conditions which place him at a higher risk of severe illness if he contracts COVID-19.  Placing Mr. Hernandez on supervised release—where he will be able to protect himself through social distancing and other self-protective measures—will best provide him "with needed . . . medical care . . . in the most effective manner."  18 U.S.C.A. 3553(a)(2)(D).  See also United States v. Pena, No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("[T]he Court's analysis is different in current circumstances. Due to the COVID-19 pandemic, the 'history and characteristics of the defendant' and the 'need . . . to provide the defendant with needed . . . medical care' now weigh heavily in favor of Mr. Pena's release, given the health risk that continued incarceration poses to him.").[6]  While the nature and circumstances of Mr. Hernandez's crime were (and remain)

---

history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

[6]  The Government argues that the BOP has made great efforts to control the spread of COVID-19 within its facilities, and represents that no inmates in the unit of FCI Fort Dix where Mr. Hernandez is housed ("Fort Dix – Low") have tested positive for the virus.  (Opp. at 2-3.)  This Court appreciates the efforts the BOP and FCI Fort Dix have taken to minimize the spread of COVID-19.  See, e.g., Memorandum Order, United States v. Osorio Perez, No. 16-CR-826 (LTS) (S.D.N.Y. June 29, 2020) (summarizing the actions FCI Fort Dix has taken in light of COVID-19).  Nonetheless, the Court agrees with Mr. Hernandez that "prisons are more conducive to viral infection than home quarantine." (Motion at 3.)  See also United States v. Anderson, No. 16-CR-824-1 (JMF), 2020 WL 2849483, at *2 (S.D.N.Y. June 2, 2020) (granting a motion for compassionate release filed by an inmate at Fort Dix – Low, notwithstanding the lack of any positive COVID-19 tests at that facility, "[i]n light of the grave risk that COVID-19 poses to prisoners generally, and Anderson specifically as a result of his obesity").

serious, his service of more than three-fourths of his custodial sentence will, under these circumstances, adequately "reflect the seriousness of the offense, [ ] promote respect for the law, [ ] provide just punishment for the offense," and "afford adequate deterrence to criminal conduct."  18 U.S.C.A. 3553(a)(2)(A), (B).  See also Anderson, 2020 WL 2849483, at *2 ("[t]he time he has served in prison has already achieved much of the original sentence's retributive, deterrent, and incapacitative purpose") (quoting Pena, 2020 WL 2301199, at *4).  Moreover, because Mr. Hernandez is only three months away from the date on which he is eligible for release to home confinement and nine months short of the prospective completion date of his custodial sentence, reduction of his sentence to time served will result in minimal, if any, sentencing disparities with other similarly situated defendants.  See United States v. Sawicz, No. 08-CR-287 (ARR), 2020 WL 1815851, at *3 (E.D.N.Y. Apr. 10, 2020) ("Further militating in favor of the defendant's release is the fact that the defendant is less than five months away from the date on which he would be eligible for release to home confinement under normal circumstances."); United States v. Patel, No. 3:17-CR-164 (JBA), 2020 WL 3187980, at *3 (D. Conn. June 15, 2020) ("He is a month away from home confinement, minimizing any sentencing disparities between him and similarly situated defendants.").  Having considered all of the Section 3553(a) factors, including those not specifically mentioned here, the Court finds that they do not outweigh the "extraordinary and compelling reasons" that support Mr. Hernandez's motion for compassionate release.

Finally, the Court finds that Mr. Hernandez is "not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)."[7]  U.S.S.G. § 1B1.13.  To be

---

[7] Section 3142(g) provides that the Court should consider (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the

sure, as the Government argues, Mr. Hernandez threatened violence in connection with the crime at issue in this case, as well as in connection with two armed robberies he committed in the fall of 1988.  (Opp. at 6; PSR ¶¶ 37-40.)  However, Mr. Hernandez is nearly a decade older than he was when he committed his last offense, and he attests (and the Government does not contest) that he has had an incident-free 116 months in federal custody.  (Motion at 2; Reply at 2.)  See also Pena, 2020 WL 2301199, at *5 ("Crucially, Mr. Pena has not received a *single* disciplinary infraction while in custody over the past five years.").  The BOP's placement of Mr. Hernandez at a low-security facility, and scheduling of his release to home confinement in October 2020, each suggest that the BOP does not consider him to be a great danger to the community at this time.  Id., at *5 ("[A]s the Government recognizes, the Bureau of Prisons has confined Mr. Pena in a low-security facility.").  Furthermore, Mr. Hernandez intends upon his release to assist in the care of his ill wife, reducing the risk that he will engage in dangerous behavior that might jeopardize his opportunity to do so.  (See Motion at 2; Reply at 1-2.)  The Court therefore concludes that Mr. Hernandez has met his burden of showing that his release at this time—a mere three months earlier than the BOP's potential release of Mr. Hernandez to home confinement—does not pose a "danger to the safety of any other person or the community," as provided Section 3142(g).

For all of these reasons, Defendant's request for compassionate release pursuant to Section 3582(c)(1)(A) is granted. It is further ORDERED that:

1. Mr. Hernandez's custodial sentence is reduced to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A);

---

history and characteristics of the defendant; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

2. Mr. Hernandez is ordered released from BOP custody, effective immediately;

3. Upon his release, Mr. Hernandez shall serve five years of supervised release, subject to the conditions of supervised release set forth in the judgment dated July 12, 2013 (Docket Entry No. 40), except as modified below:

   a. Mr. Hernandez shall serve the first nine months of supervised release on home detention, to be enforced by GPS Monitoring, at the residence approved by the Probation Department;

   b. Mr. Hernandez shall contact Probation Officer Larren Riley, at (646) 438-5971, **within twenty-four hours after his release**;

   c. Mr. Hernandez shall report to the Probation Department at 500 Pearl Street, 6th floor, **fourteen days after his release** (during which post-release period he must self-quarantine at his approved residence), to have the GPS tracker affixed to his ankle;

   d. Mr. Hernandez must possess or have access to a telephone that will allow video conferencing by the Probation Department; and

   e. In light of the COVID-19 pandemic, Mr. Hernandez must remain at his approved residence except to seek any necessary medical treatment, work, or conduct other necessary activities, in each instance with prior notice and approval by the Probation Department.

The Government shall immediately notify the Bureau of Prisons of this Order.

Docket Entry No. 65 is resolved.

SO ORDERED.

Dated: New York, New York
       July 10, 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

All members of the public, including attorneys, appearing at a Southern District of New York courthouse must complete a questionnaire and have their temperature taken before being allowed entry into that courthouse.

On the day you are due to arrive at the courthouse, click on the following weblink, or scan the following QR code with a mobile device camera to begin the enrollment process. Follow the instructions and fill out the questionnaire. If your answers meet the requirements for entry, you will be sent a QR code to be used at the SDNY entry device at the courthouse entrance.

https://app.certify.me/SDNYPublic



Note: If you do not have a mobile phone or mobile phone number, you must complete the questionnaire and temperature screening at an entry device at the courthouse.